UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| SANDRA YOLANDA SANDOVAL, | |
|---|---|
| Plaintiff, | No. 1:16-CV-03168-RHW |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 14 & 18. Plaintiff Sandra Yolanda Sandoval brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C § 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I. Jurisdiction

Ms. Sandoval protectively file an application for Supplemental Security Income on October 24, 2012. AR 183-198. Her alleged onset date is January 1, 2006. AR 185. Ms. Sandoval's applications were initially denied on April 1, 2013, AR 105-08, and on reconsideration on June 5, 2013, AR 121-130.

A hearing with Administrative Law Judge ("ALJ") Mary Gallagher Dilley occurred on June 4, 2014. AR 32-68. On March 26, 2015, the ALJ issued a decision finding Ms. Sandoval ineligible for disability benefits. AR 13-29. The Appeals Council denied Ms. Sandoval's request for review on June 1, 2015, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Sandoval timely filed the present action challenging the denial of benefits, on September 20, 2016. ECF No. 4. Accordingly, Ms. Sandoval's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 &

416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of

performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.  Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Mr. Sandoval was born in 1987. AR 184. She has experienced several traumatic events in her lifetime. She reports a history of verbal and physical abuse. AR 277, 307, 467. When she was eight years old, her older sister shot and killed their mother. AR 18, 262, 265. Ms. Sandoval witnessed the aftermath of the shooting, and she reports that she still has nightmares of this experience. AR 46. Her sister committed suicide in 2012, and at the time of her hearing, Ms. Sandoval stated that her father has terminal cancer. AR 52.

Ms. Sandoval has five children. AR 18, 277. The oldest three were adopted, and the younger two live in Seattle with their father who has filed a no contact order against Ms. Sandoval. AR 41-43, 49. During the birth of her youngest child, she had complications that required a hysterectomy. AR 307.

Ms. Sandoval also has a history of significant drug use, including methamphetamine and cocaine. AR 277. She was introduced to drugs at age 10 or 11 by the same sister that killed their mother. AR 18, 46. She testified that she uses methamphetamine on weekends or when she is really depressed, she uses methamphetamine every other day. AR 42. She reported being clean for a period of approximately five years when she lived in Seattle, but since the beginning of 2013, she has used methamphetamine frequently. AR 48-49, 52.

Ms. Sandoval suffers from multiple mental impairments, substance abuse, urinary tract infections, and obesity. AR 15. She also reports chronic pelvic pain and numbness in her right leg since her hysterectomy. AR 44, 307.

Ms. Sandoval has very limited education and work history. She told an examining physician that worked around 2006 for two weeks sorting fruit before she quit due to pregnancy. AR 308. She attended school through eighth grade. AR 40. She has trouble reading complicated words and cannot subtract, divide, or multiply numbers. *Id.*

//

## V. The ALJ's Findings

The ALJ determined that, because substance use disorder is a contributing factor material to the determination of disability, Ms. Sandoval was not under a disability within the meaning of the Act from the date the application was filed through the date of the ALJ's decision. AR 29.

**At step one**, the ALJ found that Ms. Sandoval had not engaged in substantial gainful activity since October 24, 2012 (citing 20 C.F.R. §§ 416.920(b) & 416.971 et seq.). AR 15.

**At step two**, the ALJ found Ms. Sandoval had the following severe impairments: major depressive disorder, posttraumatic stress disorder, personality disorder, substance abuse, urinary tract infections, and obesity (citing 20 C.F.R. § 416.920(c)). AR 15.

At **step three**, the ALJ found that Ms. Sandoval did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 17.

**At step four**, the ALJ found Ms. Sandoval had the residual functional capacity to perform a less than a full range of light work with the following restrictions: (1) she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) she could stand and/or walk for about six hours in an eight-hour workday with normal breaks; (3) she could sit for about six hours in an eight-hour

workday with normal breaks; (4) she could frequently push/pull controls with her right upper and left lower extremity; (5) she could occasionally climb stairs and ramps; (6) she could never climb ropes, scaffolds, and ladders; (7) she could occasionally crouch, kneel, and crawl; (8) she could frequently balance; (9) she could occasionally stoop; (10) she could frequently handle and finger bilaterally and is right hand dominate; (11) she should avoid concentrated exposure to vibration and hazards; (12) she is able to perform simple, repetitive tasks; (13) she should have no contact with the public; (13) she could have occasional, superficial contact with co-workers; (14) she has loss of focus throughout the workday and would be nonproductive 30 percent of the time; (15) she would be absent two or more times per month; and (16) she could do reading and math at a third-grade level. AR 18.

The ALJ determined that Ms. Sandoval does not have any past relevant work. AR 19.

**At step five**, the ALJ found that, in light of her age, education, work experience, and residual functional capacity, including her substance use disorder, there are no jobs that exist in significant numbers in the national economy that she can perform. AR 20.

However, the ALJ found that Ms. Sandoval's substance use disorder is a contributing factor material to the determination of the disability because she would not be disabled if she stopped the substance use. AR 20-21.

The ALJ found, that if Ms. Sandoval stopped the substance use, she would have the residual functional capacity to perform a less than a full range of light work with the following restrictions: (1) she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) she could stand and/or walk for about six hours in an eight-hour workday with normal breaks; (3) she could sit for about six hours in an eight-hour workday with normal breaks; (4) she could frequently push/pull controls with her right upper and left lower extremity; (5) she could occasionally climb stairs and ramps; (6) she could never climb ropes, scaffolds, and ladders; (7) she could occasionally crouch, kneel, and crawl; (8) she could frequently balance; (9) she could occasionally stoop; (10) she could frequently handle and finger bilaterally and is right hand dominate; (11) she should avoid concentrated exposure to vibration and hazards; (12) she is able to perform simple, repetitive tasks; (13) she should have no contact with the public; (13) she could have occasional, superficial contact with co-workers; and (16) she could do reading and math at the third-grade level. AR 21-22.

The ALJ then found that, if Ms. Sandoval stopped her substance use, considering her age, education, work experience, and residual functional capacity,

in conjunction with testimony of a vocational expert, there would be a significant number of jobs in the national economy that she could perform. These include production assembler, housekeeper, and injection molding machine tender. AR 26.

## VI. Issues for Review

Ms. Sandoval argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) erroneously concluding that Ms. Sandoval's substance abuse was a contributing factor material to the determination of disability; (2) improperly weighing the medical evidence; and (3) improperly rejecting Ms. Sandoval's symptom testimony. ECF No. 14 at 7.

## VII. Discussion

**A. The ALJ's determination that Ms. Sandoval's substance abuse was a contributing factor material to the determination of disability is supported by substantial evidence.**

If a claimant is found disabled and there is medical evidence of a substance use disorder, the ALJ must determine if the substance use disorder is a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J). Where the medical record indicates drug addiction, the ALJ must evaluate "which of [the claimant's] current physical and mental limitations . . . would remain if [she] stopped using drugs or alcohol and then determine whether any or all of [the]

remaining limitations would be disabling." 20 C.F.R.§ 416.935(b)(2). If a claimant's remaining limitations would not be disabling, the drug use is "a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(i). An individual is not disabled pursuant to the Social Security Act where substance use is a contributing factor material to the determination of disability. 42 U.S.C. § 1382(a)(3)(J).

The ALJ found that Ms. Sandoval had "improved functioning at times when her substance abuse has not predominated." AR 21. This is supported by the record.

In support of the finding, the ALJ references mental status examinations from July 10, 2013; August 29, 2013; November 27, 2013; and April 25, 2014, that show Ms. Sandoval's "memory and intellectual functioning were unimpaired." AR 21, 463, 468, 472, 476. These findings, which reflect no evidence of drug use, contrast examinations during periods in which the record demonstrates that Ms. Sandoval was using drugs. For example, Ms. Sandoval complained of problems with concentration and focus and described her memory as "very bad" during an evaluation with consultative examiner Dr. Mary Pellicer, M.D. AR 307. This examination occurred in a period in which Ms. Sandoval was using drugs, as demonstrated by her chart on February 20, 2013, indicates she was using "street

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

drugs," AR 313, and a positive test for methamphetamine on April 4, 2013, AR 321.

The Court will not disturb a finding supported by substantial evidence. *Hill*, 698 F.3d at 1158-59. The ALJ's determination that Ms. Sandoval's substance abuse was a contributing factor material to the determination of disability is supported by substantial evidence.

**B. The ALJ did not err in evaluating the medical evidence.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. The ALJ may meet the specific and legitimate standard

by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted).

### a. Dr. Aaron Burdge, PhD

The ALJ gave little weight to the opinion of psychologist Dr. Burdge, who examined Ms. Sandoval in September 2012. AR 24, 277-81. This finding is based on specific and legitimate reasons supported by substantial evidence.

Critically, the ALJ correctly noted that Dr. Burdge did not have an accurate clinical picture of Ms. Sandoval's substance use. AR 24. Dr. Burdge did not diagnose Ms. Sandoval with a substance use disorder, and noted that Ms. Sandoval reported being clean for 6 months. AR 277. He did not recommend chemical dependency assessment or treatment. AR 280. An ALJ may properly discredit a doctor's opinion if it is contradicted by objective evidence or other findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The record demonstrates a long-standing, serious drug problem. Dr. Burdge's opinion does not consider this, which significantly undermines the opinion.

Dr. Burdge opined marked restrictions in multiple areas, including: performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; communicating

and performing effectively in a work setting; completing a normal work day and work week without interruptions from psychologically based symptoms; and maintaining appropriate behavior in a work setting. AR 279-80. Yet his mental status examination found Ms. Sandoval to have normal speech and to be cooperative, alert, and attentive, with occasional eye contact. AR 281. Further, her thought process and content, orientation, perception, memory, concentration, and abstract thinking were all within normal limits. AR 281. In addition, Ms. Sandoval's score on the Personality Assessment Inventory were invalid. AR 278. Dr. Burdge's clinical observations were inconsistent with the marked limitations he opined. Inconsistencies between a physician's opinion and the medical record are also sufficient grounds to reject a medical opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Ms. Sandoval takes issue with these findings by the ALJ, but the Court will not reverse a decision because it is available to multiple interpretations. *See Molina,* 674 F.3d at 1111 (finding that if the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.")

### b. Dr. Mary Pellicer, MD

The ALJ gave little weight to the portion of the opinion of Dr. Pellicer, who examined Ms. Sandoval on March 7, 2013, that Ms. Sandoval would require more

frequent breaks due to pelvic pain. AR 25, 312. As the ALJ notes, this is inconsistent with Dr. Pellicer's findings. An ALJ may properly discredit a doctor's opinion if it is contradicted by objective evidence or other findings. *Bayliss*, 427 F.3d at 1216. Dr. Pellicer found 4/5 or 4/5 in all of the major muscle group testing, that Ms. Sandoval does not require an assistive device, and that she can squat "fairly normally." AR 311. While Ms. Sandoval did walk with a slight limp, AR 309, 311, this does not appear to be related to her pelvic pain.

Dr. Pellicer believed this pelvic pain resulted from an ovarian cyst or chronic scarring from Ms. Sandoval's hysterectomy. AR 311. Dr. Pellicer, however, found Ms. Sandoval's abdomen free of masses. AR 309. Likewise, when she was treated for a urinary tract infection in September 2013, the hospital found no masses in her abdomen, and no reproducible pain was noted. AR 437.

Moreover, the record does not demonstrate significant treatment for pelvic pain, despite Ms. Sandoval's allegations that they are severely limiting. The only treatment sought for pelvic pain was due a fall down the stairs in July 2011. AR 272. As the ALJ noted, "[c]onsidering the severity of [Ms. Sandoval's] complaints of pelvic pain, one would expect her to have sought medical relief to resolve such pain during the prior four years." AR 25.

The ALJ provided specific and legitimate reasons that are supported by substantial evidence in the record to reject Dr. Pellicer's limitations related to Ms. Sandoval's pelvic pain.

**C. The ALJ properly rejected Ms. Sandoval's symptom testimony.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ noted several inconsistencies between the record and Ms. Sandoval's testimony. For example, she stated that her right leg gives out and that she suffers from right side numbness, AR 44, yet she has not received any treatment for this. AR 23. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Likewise, Ms. Sandoval's mental health records are inconsistent with her allegations. Numerous mental status examinations do not support disabling mental health conditions. *See, e.g.* AR 463, 468, 472, 476. Moreover, she admitted on April 25, 2014, that even when she missed doses of her medication, she suffered no side effects. AR 464.

In particular, Ms. Sandoval has been extraordinarily inconsistent with reporting her drug use. She testified that she takes methamphetamine regularly since early 2013, AR 51-52, yet numerous records, including March 2013 and September 2013 indicate she denied drug use. AR 308, 436. Positive testing for methamphetamine in April 2013 further contradict her denials. AR 321.

There are numerous specific, clear, and convincing reasons provided by the ALJ for discounting Ms. Sandoval's subjective symptom testimony.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 4th day of December, 2017.

<u>*s/Robert H. Whaley*</u><br>
ROBERT H. WHALEY<br>
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19**